## LEECH, Assignee, etc., *v.* KAY.

*(Circuit Court, D. Kentucky.* ——, 1880.)

1. COSTS — CLERK'S COMMISSIONS. — The commission of 1 per centum allowed to the clerk for receiving, keeping, and paying out moneys, in pursuance of any statute or order of court, by Rev. St. § 828, cannot be claimed unless the money passes through his hands either actually or constructively.

2. BANKRUPTCY — COSTS — CLERK'S COMMISSIONS—CASE IN JUDGMENT.— Where an assignee in bankruptcy sold real estate coming into his hands, and subsequently filed a bill in equity in the circuit court to settle conflicting claims to the property, there is no statute requiring him to pay the proceeds of sale into the registry of the court; and as there was no order of court requiring him in this case to do so, the clerk cannot charge commissions on the fund.

In Equity. Matter of the clerk's costs.

*I. R. Puryear*, for himself.

*I. W. Bloomfield* and *Henry Burnett*, for plaintiff.

HAMMOND, D. J., *(sitting by designation.)* This was a bill in equity to settle a controversy between the creditors of different firms, to which the bankrupts belonged, as to the distribution of the assets. It is in the nature of a bill of interpleader by the assignee, though, perhaps, not technically such, to settle questions of title to certain property in his possession, claimed as assets by him, which claim was disputed by creditors demanding the property as assets of a firm not bankrupt. By the decree it was adjudged that the property belonged to the bankrupt firm, and should be distributed equally among all the creditors of that firm. The assignee had, as the proceeds of the sale made by him, the sum of $9,000, and the clerk insists that it was constructively in the registry of the court; that he is entitled to the commission of 1 per centum allowed him by section 828 of the Revised Statutes, and he has so taxed it in his fee bill.

The assignee excepts to this on the ground that the money belonged to him as assignee, and was never in the registry as a fact, nor could it properly belong there. Undoubtedly, in a proceeding like this, whether one of the parties be an assignee

in bankruptcy or not, or whether he claims the property in dispute in that capacity or not, it is competent for the court to order the money to be paid into the registry, or to appoint a receiver of it as in other equity cases. But neither the final decree nor any interlocutory order has made such disposition of the money. It is insisted by the clerk, however, that it is constructively *in court* because the assignee is distributing it under the orders of the court, or holds it as if paid to him by the court here, and therefore it should be considered as having been paid by him into the registry and returned to him through it. The final decree shows that this is a misapprehension of it. After adjudging *the property*, which was a warehouse, to the assignee, it goes on to say, "to be held and distributed as such, [assets of Sebree & Hobson, the bankrupts,] in bankruptcy, *in and by the district court of the United States,* * * * in the matter of Sebree & Hobson, bankrupts, through the register before whom said case is pending in bankruptcy."

It is therefore being distributed in the district court, and not this court. But, aside from this, the bankrupt law provides that the assignee shall deposit the money *in his own name as assignee* in some bank, and does not contemplate that he shall pay it into the registry. Revised Statutes, 5059. It can never go there, except by some order of court making that disposition of it, as in ordinary cases of litigation, for satisfactory reasons appearing in the suit in which the order is made. In the case of *Ex parte Prescott*, cited by the clerk, there was an order that the marshal deposit the money in bank, subject to the order of the court, and though it was not in the registry, but in the name of the marshal in a bank, Mr. Justice Story held that it was, in legal intendment, deposited in court, and allowed the clerk his fees. 2 Gall. 145; 1 Bright, Dig. 274, and note. And so, in *The Avery*, 2 Gall. 308, the same learned judge held that where it was the duty of the marshal to pay a fund into court, upon a sale *pendente lite*, the clerk was entitled to his commissions, although if the sale had been made on final decree the marshal could himself distribute it. The case *Ex parte Plitt*, 2 Wall. Jr. 453,

decides that the clerk is not entitled to commissions "for receiving, keeping, and paying out money," unless the money has actually passed through his hands, or into the custody of the court, or has been agreed to be so considered.

*In re Goodrich,* 4 Dill. 230, it was held that the statute implies that the money shall be actually received, kept, and paid out by the clerk, and that, generally at least, even where a fund is ordered to be paid through the clerk, the parties may disregard the order and pay directly, and deprive the clerk of his commissions. And see *Upton v. Triblecock,* 4 Dill. 232, note. I doubt if I should go so far as was done in *Goodrich's Case,* if it appeared that there was a combination between the parties to make the payments so as to defeat the clerk's commissions. However, this case clearly falls within the rule that the clerk is not entitled to commissions unless the money passes through his hands, either actually or constructively. It was not the duty of the assignee, under any statute or other law, to pay the fund he held into this court, nor was he even ordered to do so. The item of $90, charged by the clerk, must be, therefore, disallowed.