## UNITED STATES v. WILLIAMS.

(District Court, W. D. Washington, N. D.   June 3, 1922.)

No. 6810.

Clerks of courts ⬚⟶54—Not entitled to commission on Liberty Bonds deposited as bail.

Under Revenue Act 1919, § 1320 (Comp. St. Ann. Supp. 1919, § 3301a), authorizing deposit of Liberty Bonds as bail, and providing that, when security is no longer necessary, "such bonds so deposited shall be returned to the depositor," on such return the clerk is not entitled to exact a fee of 1 per cent., under Rev. St. § 828 (Comp. St. § 1383), as for "receiving, keeping, and paying out money."

Criminal prosecution by the United States against Charles Williams. On question of clerk's right to fee on return of Liberty Bonds deposited as bail.   Right denied.

Thos. P. Revelle, U. S. Atty., and Chas. E. Allen, Asst. U. S. Atty., both of Seattle, Wash.

John J. Sullivan, of Seattle, Wash., for defendant.

NETERER, District Judge.   The defendant deposited Liberty Bonds with the clerk of this court in lieu of personal bond.   The condition of the deposit has been satisfied, and the defendant has demanded a. return of the bonds.   The clerk, pursuant to section 828, R. S. (section 1383, C. S.), demanded as a condition to the return the payment of 1 per centum of the face value of the bonds.   The court's attention is called to McGovern et al. v. United States (C. C. A.) 272 Fed. 262, in which it is held that, under section 1320 of the Revenue Act of 1919 (Comp. St. Ann. Supp. 1919, § 3301a), United States bonds are put in the same category as cash, and the clerk is entitled to 1 per centum of the face of the bond.   The court, at page 263 of 272 Fed., said:

"We know from common knowledge that certified checks, bank drafts, and post office money orders circulate in the business world as representatives of value and in satisfaction of obligations, at least as freely as do legal tender coins and notes.   We also take judicial notice of the fact that United States bonds are quite frequently used in a similar way.   Under the order of this court by which the plaintiff in error was left at large, it was immaterial whether he deposited 'cash' or any of the enumerated representatives of value which are used in the commercial world as 'money,' and the responsibility and labor of the clerk are quite as great in keeping and handling government bonds as they would be in the case of 'cash.' "

The Lord Ormonde (D. C.) 276 Fed. 846, is also cited.

In considering the intent of the Congress enacting section 1320, supra, the object, occasion, or necessity, and the evil to be remedied, should be considered.   The purpose clearly was not for revenue to the clerk, but rather, no doubt, to create a demand for the bonds and extend a privilege to an accused to deposit United States bonds, instead of the bonds of a surety company (Comp. St. § 3293), etc., or individual sureties.   Section 828, R. S. (section 1383, C. S.), gives the clerk, for keeping and paying out money in pursuance of statute or order of

⬚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the court, 1 per centum of the amount so received and kept. Section 995, R. S. (section 1644, C. S.), requires that:

"All moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court, shall be forthwith deposited with the Treasurer, * * * or a designated depositary of the United States, in the name and to the credit of the court."

And section 5504, R. S. (section 10267, C. S.), reads:

"Every clerk * * * who fails forthwith to deposit any money belonging in the registry of the court, or hereafter paid into court or received by the officers thereof, with the Treasurer, * * * or a designated depositary of the United States, in the name and to the credit of such court, * * * is guilty of embezzlement, and shall be punished by fine."

It would appear, according to the rule of statutory construction, that the word "cash," used in section 1320, supra, bears no other relation and has no other significance than the terms which precede it, and as "individual and corporate sureties." "Cash" is defined by Bouvier as that which circulates as money. "Money" is defined by the same author as gold and silver coin, the common medium of exchange in a civilized nation. Money is the standard of value, as well as the medium of exchange. Legal Tender Cases, Juilliard v. Greenman, 110 U. S. 421, 4 Sup. Ct. 122, 28 L. Ed. 204. See also Legal Tender Cases, 12 Wall. 457, 20 L. Ed. 287. "Money," as used in a will, should be considered in the sense of cash. In re Price's Will, 169 Pa. 294, 32 Atl. 455; In re Levy's Estate, 161 Pa. 189, 28 Atl. 1068; Beck v. McGillis, 9 Barb. (N. Y.) 35. The several state statutes use, so far as examined, the term "money" in the respective state revenue acts as gold and silver coin, etc., "authorized to circulate as money which the person may withdraw on demand.[1]

Must the clerk deposit with the treasurer or designated depositary of the United States bonds in the name and to the credit of the court as money, and if he fails be guilty of embezzlement? "Money," as used in a penal statute, making misapplication of public money a crime, means legal tender coin or money of the United States. Lewis v. State, 28 Tex. App. 140, 12 S. W. 736. Is a bond a measure of value and a medium of exchange? The court judicially knows that the government bonds were recently sold on the market at less than par, and at this dictation the public press announces "all Liberty Bonds at par." The Congress is by the Constitution (article 1, § 8) empowered to borrow money on the credit of the United States, and pursuant to such power the Congress did authorize the borrowing of money, and the issuance of bonds in evidence thereof. Can the court now say that the bond which the government issued to secure money is itself money? The question answers itself. Section 1014, R. S. (section 1674, C. S.), provides:

[1] Civil Code Ala. 1896, § 3906, subd. 3; Hurd's Rev. St. Ill. 1901, p. 1493, § 292, subd. 8; Gen. St. Minn. 1894, § 1511; Rev. St. Mo. 1899, § 9123; Cobbey's Ann. St. Neb. 1903, § 10403; Rev. Codes N. D. 1899, § 1176; Bates' Ann. St. Ohio (4th Ed.) § 2730; Civ. Code S. C. 1902, § 265; Pen. Code Tex. 1895, arts. 941, 945; Rev. St. Tex. 1895, art. 5064; Ballinger's Ann. Codes & St. Wash. § 1658; Code W. Va. 1899, p. 199, c. 29, § 47; Code Va. 1887, § 489.

"For any crime or offense against the United States, the offender may, * * * at the expense of the United States be * * * bailed."

And this section is neither mentioned in argument or in the opinion of the court in Berkman v. United States, 250 U. S. 114, 39 Sup. Ct. 411, 63 L. Ed. 877. The court, Justices Holmes and Brandeis dissenting, at page 118 of 250 U. S., at page 412 of 39 Sup. Ct. (63 L. Ed. 877), says:

"With full knowledge they voluntarily asked to deposit money with the clerk and later requested that he * * * pay it out,"

—and held: One per centum may be taxed as compensation by the clerk for receiving, keeping, and paying out the money under section 828, supra. However, an examination of the entire section 1320, supra, conclusively negatives any intent of the Congress to make the deposit of government bonds as bail chargeable under section 828, R. S. (section 1383, C. S.), for it expressly provides that:

"As soon as security of the performance of such penal bond is no longer necessary such bond so deposited shall be returned to the depositor."

A direction to return the bond without exacting the per centum precludes an implication to pay, "expressum facit cessare tacitum." It follows that the clerk is not entitled to charge the 1 per centum of the face of the bond pursuant to section 828, supra.

I have conferred with Judge RUDKIN, of the Eastern District of Washington, and with Judge CUSHMAN, of the Southern Division, and each authorizes me to say that they concur in the conclusion stated.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes